UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------- x
                                                :

**Kayci L. Ramsey,**                           :

                       *Plaintiff*,          :   **Civil Action No.**   3:23-cv-189

                                             :

                          v.               :   **COMPLAINT**

                                           :

**CaptiveAire**                               :

                    *Defendant*.        :   **Jury Trial Demanded**

                                           :

------------------------------------------------------- x

## COMPLAINT

### NATURE OF THE ACTION, JURISDICTION AND VENUE

1. This is an individual action under Title VII of the Civil Rights Act of 1964 (Title VII), as amended (42 U.S.C. §2000 et seq.), and the Pennsylvania Human Relations Act (PHRA), as amended (43 Pa. C.S.A. §951 et seq.), to correct unlawful employment practices on the basis of sex discrimination and retaliation and to make Plaintiff whole.

2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331 and, for supplemental state claims, 28 U.S.C. §1367. This action is authorized and instituted pursuant to Title VII and the PHRA.

3. The actions and policies alleged to be unlawful were committed in and around Bedford, PA, where Plaintiff worked and where Defendant is located. Therefore, this action is within the jurisdiction of, and venue is proper in, the United States District Court for the Western District of Pennsylvania.

4. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC) within the respective statutory periods (300 days / 180 days) for sex discrimination (Title VII/PHRA), received her Right to Sue from EEOC within the past 90 days and a letter from the PHRC declining jurisdiction.

5. At all relevant times, Defendant has been subject to the prohibitions against sex discrimination in Title VII and the PHRA.

**PARTIES**

6. Plaintiff Kayci L. Ramsey (hereinafter referred to as "Plaintiff" or "Ramsey") has resided at all relevant times at 103 South Bedford Street, Bedford, PA 15522. Plaintiff was employed by Defendant CaptiveAire as a Duct Technician from on or about June 8, 2022, until on or about September 23, 2022, when she was constructively discharged.

7. Defendant CaptiveAire (hereinafter referred to as "Defendant" or "CaptiveAire"), is a manufacturer of commercial kitchen ventilation systems maintaining an office at 6 Commerce Court, Bedford, PA 15522.

8. Defendant employs in excess of 100 people in the Bedford, PA, area and in excess of 1,000 people nationwide.

## BACKGROUND AND STATEMENT OF CLAIMS

9. Plaintiff began her employment with Defendant as a Duct Technician on or about June 8, 2022 and worked until on or about September 23, 2022, when she was constructively discharged.

10. Plaintiff performed her job satisfactorily throughout her employment.

11. Plaintiff was assigned as a Duct Technician, a manual labor position on the shop floor.

12. Beginning almost immediately after starting to work in June 2022 Plaintiff was subjected to a sexually derogatory and hostile work environment.

13. Plaintiff did not welcome this hostile environment and made it clear from the beginning of her employment until the end of her employment that she found the environment offensive and

hostile based upon her sex, female, and the sex (male) of the vast majority of the other manual labor employees.

14. Nearly the entire staff of workers at the Bedford facility is male.

15. In fact, there were only four females, including Plaintiff, performing manual labor on the factory floor in the building where she worked out of a work force of over 100 workers performing manual labor on the factory floor in the building where she worked.

16. On or about August 27, 2022, two of Plaintiff's male co-workers talked openly in the workplace about having sex with Plaintiff.

17. The three other female employees overheard the two male co-workers discussing having sex with Plaintiff.

18. The three other female employees told Plaintiff what they heard almost immediately.

19. Plaintiff had not welcomed or invited such talk, and did not welcome such talk about her when she was told about the talk by her female co-workers.

20. Plaintiff and two of the other female co-workers promptly approached Defendant's Plant Manager with a report about the talk and about how the talk was uninvited and unwelcome to Plaintiff and the two other women.

21. Defendant's Plant Manager admitted under oath during Plaintiff's Unemployment Compensation Hearing on February 16, 2023, that the two female co-workers approached him on or about August 27, 2022, with the report of the male co-workers openly talking about having sex with Plaintiff.  (Plaintiff applied for unemployment compensation benefits after being constructively discharged in September 2022, was denied these benefits and requested a hearing.  The hearing took place before a Referee on February 16, 2023.  Plaintiff was awarded benefits as a result of the hearing.)

22. Plaintiff was extremely upset and crying when she and the other two women approached the Plant Manager in August 2022 to inform the Plant Manager.

23. The Plant Manager told Plaintiff and the two women co-workers that the male co-workers' behavior was unacceptable and that the situation would be "taken care of."

24. The Plant Manager then had a meeting with the male staff in the department that Plaintiff worked in (she was assigned to a department that worked from 6:00 a.m. to 2:00 p.m.

consisting of about 15 workers) and told them that speaking in such a manner was inappropriate.

25. The Plant Manager also cautioned the male co-workers that they would be disciplined if they spoke that way again.

26. After the Plant Manager cautioned the male co-workers about their talk, however, the male co-workers retaliated against Plaintiff.

27. This included shunning Plaintiff not only when off-shift but even when it meant ignoring her on her work, including work matters that could have affected her own safety and the safety of her co-workers.

28. This retaliation against Plaintiff occurred almost immediately after the Plant Manager's meeting with the male co-workers.

29. Plaintiff reported to the Plant Manager within a matter of a day or so that her male co-workers were shunning her and refusing even to discuss work-related issues with her.

30. The Plant Manager denied to Plaintiff that she was being ignored or shunned by her male co-workers.

31. The Plant Manager also said to Plaintiff words to the effect "So what did you expect?"

32. The Plant Manager took no action in response to Plaintiff's complaint.

33. Plaintiff also complained to her male co-workers about being shunned.

34. Despite her complaint to the Plant Manager and then to her co-workers the shunning continued.

35. On or about September 21, 2022, Plaintiff and other co-workers in her department were discussing how the production for the day would be done and assigning a task to each of the members of the department.

36. Plaintiff and another female co-worker spoke up and asked if their task for the day could be switched since Plaintiff was better at completing the installation and her co-worker was better at doing the welding.

37. A male co-worker became upset by Plaintiff and her fellow co-worker's suggestion and said "just because she has a vagina does not mean she can pick and choose which jobs she does around here."

38. This statement was made in plain hearing to Plaintiff.

39. Plaintiff was upset about the remark.

40. The remark was unwelcome and highly offensive.

41. Plaintiff went immediately to the Plant Manager to tell him what had been said by the co-worker about her having a "vagina."

42. The Plant Manager told Plaintiff the statement was unacceptable and a violation of Defendant's policy about inappropriate, sexually harassing language.

43. The Plant Manager informed her that he would conduct an investigation into the incident.

44. The Plant Manager admitted at the Unemployment Compensation Hearing that Plaintiff complained about the comment made by the male co-worker.

45. The Plant Manager admitted at the UC Hearing that Plaintiff was very upset when she made the complaint.

46. The Plant Manager further testified that upon concluding a so-called "investigation" the Plant Manager determined that while the Plant Manager believed the male co-worker may have made the statement the Plant Manager believed the co-worker did not make it directly to Plaintiff.

47. Following the "investigation" the male co-worker was instructed by the Plant Manager to leave the plant that afternoon (about 90 minutes before the end of the shift) without pay.

48. The Plant Manager admitted at the UC hearing that sending the male co-worker home early that day cost the male co-worker about one and a half hours of work time (about $30 in wages).

49. The male co-worker subsequently returned to work the following Monday after having two-days of scheduled leave, Thursday and Friday, after the incident took place.

50. The male co-worker suffered no other disciplinary action of any kind: he was not suspended, he was not formally disciplined and he was not terminated.

51. Upon learning that the male co-worker would be returning to work on Monday, Plaintiff asked to speak to the Plant Manager again.

52. The Plant Manager informed Plaintiff that the co-worker had been punished by not being paid for approximately one and a half hours of work time ($30.00) when he was sent home early on the day of the incident.

53. The Plant Manager admitted at Plaintiff's Unemployment Compensation Hearing that the $30.00 loss in pay was the only punishment given to the male co-worker.

54. Plaintiff became upset when she learned the outcome of the "investigation" and the lack of any discipline other than the loss of about $30, and when she was told she would have to work with the co-worker when he returned to work on Monday.

55. Plaintiff learned of this on or about September 23, 2022.

56. Defendant did not offer to move Plaintiff or the male co-worker to another shift or department at any time.

57. Upon learning no other discipline would be imposed on the male co-worker, and that she would have to continue to work with him as if nothing had happened, Plaintiff became distraught.

58. Plaintiff could not work in these intolerable conditions and continue to be subjected to the unwelcome sexual hostility and the retaliation she had already experienced and that was likely to increase given the lack of effective action by management.

59. Plaintiff had complained twice to senior management, the Plant Manager, two times and nothing was done to correct the intolerable conditions.

60. As a result, Plaintiff informed her immediate supervisor (who reported to the Plant Manager) that she was leaving for the day and was quitting her job with Defendant because of what had happened with the co-worker and management's failing to take any effective action.

61. Plaintiff's immediate supervisor simply told Plaintiff that she should "do what you have to do."

62. Plaintiff then left Defendant's facility.

63. This was on or about September 23, 2022.

64. Plaintiff felt compelled to resign because the sex-based comments were unwanted, offensive, threatening and emotionally disturbing towards Plaintiff and because notwithstanding her repeated complaints about this environment management refused to take prompt, effective action to remedy the environment.

65. The statements, and retaliation, created a hostile work environment.

66. Plaintiff feared for her safety in the workplace because of her co-workers' behavior.

67. Even after Plaintiff made repeated complaints to management, management refused to correct the statements or prevent the statements, or retaliation, from happening again.

68. Defendant has a Harassment Policy within its Employee Workplace Guidelines in place but failed to take prompt and corrective action to stop the sexual harassment.

69. Defendant's Plant Manager admitted during Plaintiff's Unemployment Compensation Hearing on February 16, 2023, that certain behaviors in the Employee Workplace Guidelines could lead to termination depending on the circumstances.

70. These guidelines were in place during Plaintiff's employment.

71. The Harassment Policy includes Group One Inexcusable Behaviors which includes abusive, threatening, profane, coercive or harassing conduct of a co-worker.

72. The Plant Manager admitted during the UC hearing that an indecent, lude or offensive sexually suggestive harassment or behavior as defined in the company's policy would be considered Group One Inexcusable Behaviors and could lead to termination depending on the circumstances.

73. The Plant Manager admitted that sexually offensive language would be included in the Group One Inexcusable Behaviors.

74. Defendant has not provided a legitimate non-discriminatory reason for its actions or inactions.

75. But for the sexual harassment, and retaliation, against her Plaintiff would not have resigned.

76. As a result of having to find employment elsewhere Plaintiff has incurred lost wages and emotional distress.

77. The harassment, and retaliation, would have detrimentally affected any reasonable woman in the position of Plaintiff.

78. The harassment, and retaliation, and the failure by management to take any meaningful action to correct the harassment or retaliation, despite Plaintiff's repeated complaints and requests for help would have resulted in any reasonable woman resigning.

79. The sexual harassment, and retaliation, created a hostile work environment that detrimentally affected terms and conditions and privileges of employment (pay, career advancement, opportunity, etc.) for Plaintiff.

80. The sexual harassment, and retaliation, produced tangible job detriment (loss of pay; loss of promotional opportunities; out-of-pocket expenses).

81. Defendant's actions and inactions are in violation of the prohibitions in Title VII and the PHRA against sex discrimination.

82. Defendant knew its actions, and inactions, were in violation of Title VII and the PHRA.

## COUNT I: SEX DISCRIMINATION: HOSTILE WORK ENVIRONMENT
## (TITLE VII / PHRA)

83. Plaintiff hereby incorporates by reference Paragraphs 1 through 82 of her Complaint as though the same were more fully set forth herein.

84. Plaintiff was subjected to sexual harassment in the workplace.

85. The harassment included unwanted, offensive sexual comments.

86. The harassment was severe and pervasive.

87. The harassment was unwanted.

88. The harassment was by Plaintiff's co-workers.

89. The harassment created a hostile work environment.

90. Plaintiff opposed this sexual harassment.

91. The harassment would have detrimentally affected any reasonable woman in Plaintiff's position.

92. The intentional discrimination detrimentally affected a term and condition and privilege of employment (pay, career advancement, opportunity, etc.).

93. Plaintiff took the steps reasonably required to correct or eliminate the sexual harassment.

94. Defendant failed to take prompt, effective action to correct the harassment.

95. Rather, Defendant knowingly and intentionally refused to take any actions out of deference to and in favor of Plaintiff's male co-workers.

96. In effect, Plaintiff was forced to accept the harassment as a term and condition of employment.

97. As a result, Plaintiff resigned.

98. Plaintiff was constructively discharged.

99. Defendant's actions and inactions were in violation of Title VII and the PHRA.

100. Defendant knew its actions and inactions against Plaintiff were in violation of Title VII and the PHRA.

101. Plaintiff has suffered tangible and intangible losses resulting from Defendant's violations of the law: loss of pay; loss of promotional opportunities; humiliation; mental anguish; and, damage to reputation.

102. Plaintiff is seeking lost wages, compensation for lost opportunities and for pain and suffering, attorney's fees and costs.

103. Defendant's violations of the law were knowing and willful and with malicious intent.

## COUNT II: CONSTRUCTIVE DISCHARGE (TITLE VII / PHRA)

104. Plaintiff hereby incorporates by reference Paragraphs 1 through 103 of her Complaint as though the same were more fully set forth herein.

105. On or about September 23, 2022, Plaintiff resigned from employment with Defendant.

106. Plaintiff's decision to resign was motivated solely by the hostile work environment to which she was being subjected.

107. A reasonable woman in the same or similar conditions would have felt compelled to resign.

108. Plaintiff was constructively discharged effective September 23, 2022.

109. By reason of the conduct set forth in Count I, above, Defendant unlawfully discriminated against Plaintiff because of her sex with respect to the terms, conditions, and privileges of employment and, by doing so, constructively discharged Plaintiff effective September 23, 2022.

110. In constructively discharging Plaintiff, Defendant violated Title VII and the PHRA.

111. As a direct and proximate result of Defendant's actions set forth above, Plaintiff has suffered loss of pay; loss of promotional opportunities; humiliation; mental anguish; and, damage to reputation.

112. Plaintiff is seeking lost wages, compensation for lost opportunities and for pain and suffering, attorney's fees and costs.

113. Defendant's violations of the law were knowing and willful and with malicious intent.

### COUNT III:  RETALIATION (TITLE VII / PHRA)

114. Plaintiff hereby incorporates by reference Paragraphs 1 through 113 of her Complaint as though the same were more fully set forth herein.

115. Plaintiff is an employee of Defendant within the meaning of Title VII and the PHRA.

116. Plaintiff engaged in a protected activity: complained about sexual harassment in the workplace.

117. Plaintiff suffered an adverse action following the protected act (shunning and constructive discharge).

118. There is a causal connection between the protected act and the adverse employment action.

119. There is no bona fide business reason for the adverse action.

120. Defendant's retaliation against Plaintiff is in violation of Title VII and the PHRA.

121. Defendant's violation is knowing, willful, and in reckless disregard of Title VII and the PHRA.

122. As a result of Defendant's discriminatory conduct, Plaintiff has suffered tangible and intangible losses in the form of lost wages, lost benefits, lost promotional opportunities, humiliation and mental anguish and damage to reputation.

123. Plaintiff seeks to recover an amount equal to these tangible and intangible losses, as well as interest, attorney's fees and costs.

## **GENERAL PRAYER FOR RELIEF**

124. WHEREFORE, Plaintiff respectfully requests that this Court:

    A. Order Defendant to make Plaintiff whole by paying monetary damages, interest and other affirmative relief necessary to eradicate the effects of its deprivation of Plaintiff's civil rights and its other unlawful actions.

    B. Order Defendant to pay compensatory damages to Plaintiff for the injuries to her reputation, and the emotional distress, sustained as a result of Defendant's illegal actions.

    C. Order Defendant to pay the costs and reasonable attorney's fees incurred by Plaintiff.

D. Grant such further relief as the Court deems necessary and proper, including punitive damages.

E. Defendant's violations of the law were knowing and willful and with malicious intent. Plaintiff is therefore also seeking punitive damages under Title VII.

        Respectfully submitted,

        s/Joseph H. Chivers
        Joseph H. Chivers, Esquire
        PA ID No. 39184
        First & Market Building
        Suite 650
        100 First Avenue
        Pittsburgh, PA  15222-1514
        (412) 227-0763
        (412) 281-8481 FAX
        jchivers@employmentrightsgroup.com

        *Counsel for Plaintiff*
        *Kayci L. Ramsey*

DATED: <u>August 22, 2023</u>